# Woods and McBroom to use, etc. *versus* The Pittsburgh, Cincinnati and St. Louis Railway Company.

A. and B. contracted in 1855 with a railroad company to do certain work in the construction of the road for a sum certain, and executed the work in performance of their contract. In 1856 the railroad company executed a mortgage upon its road in contravention of the provisions of the Act of January 21st 1843, Pamph. L. 367, forbidding any railroad company to execute a mortgage upon its road while debts incurred to contractors and laborers for the construction thereof remained unpaid. In 1857 A. and B. filed a bill in equity against the railroad company and obtained a decree for the amount due to them under their contract. In 1865 the mortgagee filed a bill to foreclose his mortgage. To this bill A. and B. were made defendants, it being set out in the bill that they claimed to have a lien or some interest in the road, the validity of which complainant denied. A. and B. were served with process and appeared but failed to plead, whereupon a decree was entered against them pro confesso. Subsequently a decree was entered in the cause, declaring the mortgage a first lien, fixing the amount due thereon, directing payment of said amount by a time certain, and in default of such payment directing a sale of the road at which the purchaser should take a title free and discharged from all liens or incumbrances whatever. Default was made, and the road sold accordingly in 1867, and bought by the P., C. & St. L. R. Co. A. and B. having afterwards in 1878 issued a scire facias in accordance with the provisions of the act of April 4th 1862, § 1, Pamph. L. 235, to continue and revive the lien of their decree of 1857, to which scire facias the P., C. & St. L. R. Co. defended as terre tenant, *Held*, that the plaintiffs were under the circumstances to be held estopped by the decree in the foreclosure suit and proceedings thereon, and that the terre tenant was therefore entitled to judgment.

November 1st 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, STERRETT, and GREEN, JJ. PAXSON, J., absent.

Error to the Court of Common Pleas No. 2 of *Allegheny county:* Of October and November Term 1881, No. 80.

Scire facias sur decree, by Hugh Woods and John McBroom to use, etc. against the Pittsburgh and Steubenville Railroad Company, with notice to The Pittsburgh Cincinnati and St. Louis Railway Company, terre tenants. The scire facias was brought by virtue of the provisions of the Act of April 4th 1862, § 1, Pamph. L. 235.

On the trial, before KIRKPATRICK, J., the following facts appeared:—On May 12th 1855, Hugh Woods and John McBroom entered into an agreement with the chief engineer of the Pittsburgh and Steubenville Railroad Company, defendant, to finish a certain heading or drifting in a tunnel upon the line of the road of said company. They performed the work according to

contract, and upon August 14th 1856, at a meeting of the board of directors of the railroad company their agreement with the engineer was ratified, it being resolved that they should be paid for the work $5,000 in cash and $1,650 in the capital stock of the railroad company.

- On August 1st 1856 the railroad company executed a mortgage upon all its property and franchises to one Thomas McElrath in the sum of $1,000,000 in order to secure certain bonds of the said company that day issued in said amount. This mortgage was recorded October 20th 1856. It was executed in contravention of the Act or Resolution of January 21st 1843, Pamph. L. 367, which provides in substance that it shall not be lawful for any railroad company to execute a mortgage of its road while the debts incurred to contractors and laborers for the construction of the road remain unpaid, so as to defeat, postpone, endanger or delay said creditors, without their written consent first had and obtained. Said Act or Resolution further provides that any mortgage executed in contravention of its provisions shall be null and void as against creditors as aforesaid.

On July 14th 1857 Woods and McBroom filed a bill in equity against the Pittsburgh and Steubenville Railroad Company, wherein they averred their contract with the chief engineer of said company, their completion of the work under said contract, the ratification of said contract by the directors of said company and the resolution of said directors fixing the the compensation of complainants. The bill further averred that the amount of said compensation so fixed had not been paid complainants, and prayed for a decree ordering and directing such payment. A copy of this bill was served on the company defendant, and a rule to plead filed. Defendant, however, did not appear, and the bill was accordingly taken pro confesso. A decree was entered fixing the sum due from defendant to complainants at $8,890.93 in cash and $1,650 in the defendant's capital stock, and it was ordered that that sum be paid to the complainants. This decree was entered January 5th 1858.

In the year 1865 McElrath, as trustee for the various bond-holders, filed a bill in equity against the Pittsburgh and Steubenville Railroad Company to foreclose the mortgage held by him. To this bill Woods and McBroom were, inter alios, made parties defendant, the bill averring that said defendants "allege themselves to have been contractors with the said Pittsburgh and Steubenville Railroad Company for the construction of said work, and that in pursuance of said contract, they did some work towards the construction of said railroad, and claim some lien thereon or interest therein, of the nature of which the complainants are not advised, but which they do not admit to be valid,

or that the same can in anywise affect the priority of lien of the said first mortgage or the rights of any of the holders of bonds thereby secured."

The bill prayed that the mortgage held by complainants be decreed a first lien on the railroad, that the amount due thereon be ascertained, that the Pittsburgh and Steubenville Railroad Company be decreed to pay whatever amount might thus be found due upon a day certain, and finally, that in default of such payment, it be decreed that the defendants, and all persons claiming under them, be absolutely barred and foreclosed of and from all right and equity of redemption in and to the said premises; or that a decree be entered directing the sale of the whole of the premises mortgaged or intended so to be, at such time and in such manner by such master or other officer or persons, and the purchase money thereof be paid or adjusted or settled as the court may direct, appoint and deem proper.

Woods and McBroom were served with a subpœna and appeared in the cause, but being ruled to plead, answer or demur within a stipulated time, failed to do so. A decree pro confesso was accordingly entered against them.

The other defendants filed answers in the cause, and the case was referred to an examiner and master.

Upon the coming in of the master's report, the case was heard upon bill, answers and proofs, and also upon the said report, and a decree was entered that the mortgage of complainants constituted a first lien upon the mortgaged premises, that there was due thereon the sum of $865,234.06, that the railroad company defendant should pay said sum to defendant on January 10th 1867, or that in default of said payment all the property covered by the mortgage should be exposed at public sale and sold to the highest and best bidder, complainant McElrath to execute to the purchaser a good and sufficient deed therefor in fee simple, "said purchaser to hold the same free and discharged from all liens or incumbrances whatever." (See McElrath *v.* Pittsburgh and Steubenville Railroad Company, 5 P. F. Smith 192.)

Default being made in the payment of the sum fixed by this decree at the time stipulated, the mortgaged premises were sold in the manner specified in the decree, and were bought by the Pittsburgh, Cincinnati and St. Louis Railway Company to which corporation McElrath executed a deed in fee simple. This deed was executed December 7th 1867.

On February 2d 1878 Woods and McBroom, in accordance with the provisions of the Act of April 4th 1862, § 1, Pamph. L. 235, issued the present scire facias to revive and continue the lien of the decree entered in their favor January 5th 1858 against the Pittsburgh and Steubenville Railroad Company; the

[Woods to use *v.* Pittsburgh, &c. Railway Co.]

Pittsburgh, Cincinnati and St. Louis Railway Company, being notified as terre tenants, appeared and took defence.

The court instructed the jury to find for plaintiffs, subject to the point reserved whether said plaintiffs were not estopped by the decree in the case of McElrath *v.* Pittsburgh and Steubenville Railroad Co., whereto they had been made parties defendant, and by the proceedings subsequent to said decree, whereby the terre tenant had derived its title. Verdict accordingly. Subsequently the court entered judgment for the terre tenant on the point reserved, non obstante veredicto, filing the following opinion:

" Unless concluded by the proceedings in the case of McElrath *v.* The Pittsburgh and Steubenville Railroad Company, 5 P. F. Smith 189, the plaintiffs are entitled to judgment in their favor.

" On examination of the pleadings in that case it is evident that the purpose of the bill in that case was not merely to obtain a decree of foreclosure on the mortgage held by the plaintiff, but, also, in the same action, to call in all the parties having or claiming to have liens on the road and franchises of the company, and have the rights of all parties determined before a sale should be ordered, so that bidders at the sale could know what they were purchasing, whether a road burdened with liens or a property free from incumbrances.

" We have no doubt that the court had jurisdiction and full power to determine these questions in that proceeding.

" The judgment of the present plaintiffs had then been entered against the Pittsburgh and Steubenville Railroad Company, they were all made parties defendant to the bill, a decree pro confesso and a final decree was entered against them.

" The final decree declared that ' the mortgage was a first lien on the road. . . And further, that the purchasers under the mortgage should take the road free from all liens and incumbrances whatever.'

" Under this decree the present defendant or their vendors became purchasers.

" Had the decree been that the judgment of Woods and McBroom was a valid subsisting lien prior to the mortgage, and that the purchaser under the mortgage should take subject thereto, the defendant could not thereafter have been heard in denial of the validity of that decree.

" We are of the opinion that the decree referred to and in evidence was a conclusive adjudication of the questions involved here."

Plaintiffs thereupon took this writ, assigning for error the entry of judgment for terre tenant non obstante veredicto.

*T. C. Lazear* and *S. A. McClung* (with whom was *John G. MacConnell*), for the plaintiffs in error.—Plaintiffs were not estopped by the decree in McElrath *v.* The Pittsburgh and Steubenville Railroad Company, and the proceedings in pursuance thereof. By admitting the allegations of the bill as to the invalidity of their lien, they merely constituted those allegations evidence as against them : 1 Daniel's Chan. Pr. 531. Moreover, they were not bound by the clause of the decree deciding McElrath's mortgage to be a first lien. That clause must be construed with reference to the object of the bill itself, which was evidently to procure a foreclosure of the mortgage and effect a distribution of the proceeds of sale among the bondholders. This right Woods and McBroom could not resist or gainsay, for their claim was protected by the Resolution of 21st January 1843, and could in nowise be impaired or discharged by the sale under the mortgage, inasmuch as by the terms of the Resolution, " the mortgage was fraudulent, null and void as against such contractors." They could make no claim therefor upon the proceeds of the sale, and hence, as to them, it was true, as alleged in the bill (and which was established as against them by the decree pro confesso), that their claim " could in no wise affect the priority of the lien of the said first mortgage or the rights of any of the holders of the bonds secured thereby." If the mortgage was " fraudulent, null and void as against them," how could they be heard to object to any sale that might be made under it or to the application to it of the entire proceeds, so as to give it the effect of a first lien as regards such proceeds ? Byrod's Appeal, 7 Casey 241 ; Fisher's Appeal, 9 Casey 294 ; Hoffman's Appeal, 8 Wright 95 ; Fisher *v.* Kurtz, 4 Casey 50.

The decisions under the Resolution of 1843, which, we maintain, make our claim perpetual as against mortgages and other transfers, until paid, are the following: Fox *v.* Seal, 22 Wallace 424 ; Tyrone and Clearfield R. R. Co. *v.* Jones, 29 P. F. Smith 60 ; Pennsylvania and Delaware R. R. Co. *v.* Leuffer, 3 Norris 168 ; Shamokin and Pottsville R. R. Co. *v.* Malone, 4 Norris 25 ; Pittsburgh, Cincinnati and St. Louis R. W. Co. *v.* Marshall, Ibid. 187.

The portion of the decree providing that in case of sale the purchaser should take free of all liens, was unwarranted, and, as regards plaintiffs, an utter nullity.

Plaintiffs were not properly joined as parties defendant: Michigan State Bank *v.* Gardiner, 3 Gray 308; Story's Eq. Pleading. And therefore, though served with process, were not bound to defend, and are not concluded by the decree : Gihon *v.* Belleville White Lead, 3 Halst. Ch. 531 ; Williamson *v.* Pro-

basco, 4 Ib. 571; Hogan *v.* Walker, 14 Howard 37; Jerome *v.* McCarter, 94 United States 735.

If the decree would have been of no benefit to Woods and McBroom in the McElrath case, had they gone on and obtained one in their favor, they are not estopped by the decree actually entered in the case: Work *v.* Work, 2 Harris 319; Fisher *v.* Kurtz, 4 Casey 50.

The other question in the case is whether the plaintiffs are entitled to recover for the stock equal with the cash portion of the decree. We maintain that, as the company did not deliver the stock according to their option, they must now pay its face value in money, and on this point we refer to 2 Parsons on Contracts 652; Roberts *v.* Beatty, 2 Penrose & Watts 63; Church *v.* Feterow, Ibid. 301.

*Dalzell* (with whom was *Hampton*), for defendant in error. —Plaintiffs were properly made parties to the bill in equity filed by McElrath: Story's Eq. Pleading 193; Finley *v.* Bk. U. S., 11 Wheaton 304; Bishop of Winchester *v.* Beavor, 3 Vesey 315–317; Haines *v.* Beach, 3 Johns. Ch. 459; Bishop *v.* Paine, 11 Vesey 198; Mondey *v.* Mondey, 1 Vesey & Beam. 223; Cockes *v.* Sherman, 2 Freeman 14; Sherman *v.* Cox, 3 Ch. Rep. 83 (46); Ensworth *v.* Lambert, 4 Johns. Ch. 604; McGown *v.* Yerks, 6 Johns. Ch. 450. And are therefore undoubtedly estopped by the decree in that cause and the proceedings thereon: Jerome *v.* McCarter, 94 United States, 735; Westcott *v.* Edmunds, 18 P. F. Smith 36; Taylor *v.* Cornelius, 10 P. F. Smith 198; Wilhelm's Appeal, 29 P. F. Smith 120; Giffard *v.* Hort, 1 Sch. & Lef. 408.

In P., C. & St. L. Ry. Co. *v.* Marshall, 4 Norris, a recovery was had upon a contractor's claim, for the reason that not having been made a party to the McElrath proceeding he was not bound by it. The converse of the proposition must be true in this case. The plaintiffs, having been parties, are concluded by the decree.

Chief Justice SHARSWOOD delivered the opinion of the court, January 2d 1882.

It is not to be questioned that the claim of the plaintiffs, as contractors of the Pittsburgh and Steubenville Railroad Company, under the resolution of the General Assembly of January 21st 1843, Pamph. L. 367, was paramount to the mortgage of McElrath under proceedings upon which the road was sold and the defendants claim title. The amount of their claim was ascertained by the decree of January 5th 1858, at least prima facie, though not conclusively as to McElrath, the mortgagee, who was not a party to it, though his mortgage was then in

[Woods to use v. Pittsburgh, &c. Railway Co.]

existence. It is clear also that if it had been paid in whole or in part when the decree of foreclosure and sale under the McElrath mortgage was made, the mortgagee and purchasers were entitled to the benefit of such payment.

It may also be that under the resolution no mere acquiescence or other acts in pais can operate as an estoppel. Nothing can avail but the written assent of the creditors to the mortgage first had and obtained: Shamokin Valley and Pottsville Railroad Co. v. Malone, 4 Norris 25. But it certainly cannot be maintained that there may not be an estoppel by matter of record. An adjudication at law or in equity against the claim of the contractor must be as conclusive against him as against any other claimant.

What then was the effect of the proceeding in this court upon the McElrath mortgage and the decree of sale thereunder? If the plaintiffs had not been made parties, their rights would have been entirely unaffected. But they were parties. The bill charged that " they (Woods and McBroom) claimed to have a lien on the premises described in the mortgage, that they allege themselves to have been contractors with the said Pittsburgh and Steubenville Railroad Company for the construction of said work, and that in pursuance of said contract they did some work toward the construction of said railroad, and claim to have some lien or interest therein, of the nature of which the complainants are not advised but which they do not admit to be valid or that the same can in any wise affect the priority of lien of the said first mortgage or the rights of any of the holders of the bonds thereby secured." The plaintiffs were thus distinctly called upon to come in and make known their claim, not as a lien merely on the fund to be produced by the sale, but some interest in the railroad. They were stated to be contractors for the building of the road, the holders, therefore, of a privileged claim—under the resolution of 1843—something more than a lien, an interest in the road which could not be divested by a sale. The inference from all this was too plain to be mistaken. It was not as mere holders of a lien which could come upon the fund, but as having an interest paramount to the mortgage, that they were summoned to appear and answer. The principal contention of the plaintiff here has been that there was no prayer in the bill that the road should be sold clear of all incumbrances. If these contractors had come in and established their claim, no such decree could have been made. The sale would have been necessarily subject to their claim. It might well be that the sale would not produce sufficient to pay them. The purchasers must then take cum onere. But no such contractors making defence, though summoned and appearing, the decree of sale could then properly be made, as it was

[Phelps *v*. Pittsburgh, &c. Railway Co.]

clear of all incumbrances. If all that the bill sought was to ascertain who were lienholders to be paid from the proceeds, they were unnecessary parties. This they knew very well; they knew or ought to have known that they were made parties as having an interest in the road paramount to the mortgage. It is perfectly clear that the object and sole object in making them parties was to ascertain what claims the road would be subject to in the hands of the purchasers, so that bidders might know for what they were bidding. They appeared to the bill, they had the opportunity to prove their claim conclusively as against purchasers. They did not avail themselves of it. When ruled to plead, answer or demur, they suffered the bill to be taken pro confesso against them. What did this mean? Surely that they had no such interest in the road as contractors as could be set up against the mortgage. They chose to adopt this course, and they must take the consequences. Generally, under a bill to foreclose a second mortgage, the first mortgagee is not a necessary, but he is a proper party, especially wherever a sale is prayed for, as it is certainly desirable that the property should bring a full and fair price, which cannot be, if there is any uncertainty as to what title the purchaser will take—free or incumbered: Story's Eq. Pl. § 193; Jerome *v*. McCarter, 4 Otto 735. These plaintiffs, after suffering the bill to be taken pro confesso, for some reason best known to themselves, chose to go to sleep for eleven years, and then, when all the papers and vouchers of this long-dead-and-buried corporation are probably destroyed or lost, the witnesses dead or scattered to the four winds, so that payment of the claim before the decree could not be proved, they suddenly wake up and ask that the road in the hands of the purchasers should be made liable. It is a very stale claim, not to be favored, and ought not to succeed.

Judgment affirmed.

GORDON, J., dissents.